**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**,

| | | |
|---|---|---|
| BETTY D. EVANS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 10-cv-690-TLW |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Betty D. Evans, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c),

requests judicial review of the decision of the Commissioner of the Social Security

Administration denying her disability benefits under Title XVI of the Social Security Act

("Act").  In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed

before the undersigned United States Magistrate Judge.  (Dkt. # 9).  Any appeal of this decision

will be directly to the Tenth Circuit Court of Appeals.

**Introduction**

When applying for disability benefits, a plaintiff bears the initial burden of proving that

he or she is disabled.  42 U.S.C. § 423(d)(5); 20 C.F.R. § 416.912(a).  "Disabled" under the

Social Security Act is defined as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment."  42 U.S.C. §

423(d)(1)(A).  A disability is a physical or mental impairment "that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques."  42 U.S.C. § 423 (d)(3).  The evidence

establishing a disability must come from "acceptable medical sources" such as licensed and

certified psychologists and licensed physicians.  20 C.F.R. § 416.913(a).  A plaintiff is disabled

under the Act only if his "physical or mental impairment or impairments are of such severity that

he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work in the national economy."

42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a

disability claim.  20 C.F.R. § 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)

(setting forth the five steps in detail).  "If a determination can be made at any of the steps that a

plaintiff is or is not disabled, evaluation under a subsequent step is not necessary."  Williams,

844 F.2d at 750.

In reviewing a decision of the Commissioner, the court is limited to determining whether

the Commissioner has applied the correct legal standards and whether the decision is supported

by substantial evidence.  Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005).  Substantial

evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.  See id.  The Court's review

is based on the record, and the Court will "meticulously examine the record as a whole, including

anything that may undercut or detract from the ALJ's findings in order to determine if the

substantiality test has been met."  Id.  The Court may neither re-weigh the evidence nor

substitute its judgment for that of the Commissioner.  See Hackett v. Barnhart, 395 F.3d 1168,

1172 (10th Cir. 2005).  Even if the Court might have reached a different conclusion, if supported

by substantial evidence, the Commissioner's decision stands.  White v. Barnhart, 287 F.3d 903,

908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, Betty D. Evans, a forty-seven-year-old female, applied for disability benefits on August 18, 2008, alleging an onset date of January 1, 2008.  (R. 149).  Plaintiff alleged that her pain and mental health issues prevented her from working.  (R. 153, 169).  Plaintiff complained of migraines and arthritic pain in her hands, neck, back, and knees.  (R. 169).  Plaintiff also stated that she suffered from bi-polar disorder.  (R. 153).  After reviewing plaintiff's application and medical records, the Commissioner denied plaintiff's application on December 29, 2008.  (R. 61, 63-64).  The denial was affirmed on reconsideration on March 23, 2009.  (R. 62).  Plaintiff then requested a hearing before an administrative law judge ("ALJ").  (R. 70-71).  That hearing was held on February 25, 2010.  (R. 26-60).

At the hearing, the ALJ heard testimony from plaintiff and from a vocational expert.  (R. 26-60).  Following the hearing, the ALJ issued a decision denying plaintiff benefits.  (R. 8-21).  Plaintiff filed an appeal with the Appeals Council, which declined to review plaintiff's case.  (R. 1, 7).  Plaintiff then filed this appeal.  (Dkt. # 2).

### Plaintiff's Work History

Plaintiff reported that she had worked as a motel housekeeper part-time for ten years and had done some work as a lawn worker.  (R. 38, 153, 162).  Plaintiff testified at the hearing that she had not worked in ten years.  (R. 36).  Plaintiff's FICA earnings report indicated that plaintiff had minimal earnings for her entire working life.  (R. 136).

### Plaintiff's Medical History

Plaintiff first sought medication for neck pain and migraines at a free clinic in November 2005.  (R. 385).  She asked the free clinic for refills of the headache medication in February

2006. (R. 339, 386). Thereafter, the record shows no complaints of neck pain or headaches for almost two years.

In December 2007, plaintiff was admitted to the emergency room at Bristow Medical Center with chest pains and a headache. (R. 259). Plaintiff received morphine for the pain but complained that it did not ease her headache symptoms. (R. 260). She was transferred to St. John's Hospital for further observation and treatment. (R. 262). After two days at St. John's, plaintiff discharged herself against medical advice. (R. 211). Plaintiff's doctor at St. John's suspected that plaintiff's chest pain was not real and noted that plaintiff "needed high doses of morphine." (R. 211, 213). The doctor stated in his report that "it appears that the patient is seeking drugs." (R. 214).

Plaintiff returned to the Bristow Medical Center's emergency room in January 2008, complaining of a cold and a headache. (R. 255). The medical records also noted that plaintiff reported feeling depressed. (R. 257). Plaintiff was discharged with instructions to take over-the-counter pain relievers for her headache. (R. 258).

Three weeks later, plaintiff sought treatment at the free clinic for a sinus infection with headache, arthritis, and back pain. (R. 341). Plaintiff told the doctor that she had arthritis pain in her back, neck, and hands and asked for Tramadol.[1] Id. Plaintiff continued to receive medication on a monthly basis from the free clinic through the end of 2008 (R. 390-98), each time receiving pain medication for arthritis. Id. Plaintiff also began taking Cyclobenzaprine, or

---

[1] Tramadol is a pain reliever "used to relieve moderate to moderately severe pain." http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000960/ (last visited on March 27, 2012).

Flexeril,[2] for pain in March 2008.  (R. 342).  In May 2008, plaintiff also complained of anxiety. (R. 343).

Plaintiff sought emergency room treatment six more times in 2008.  In March and April 2008, plaintiff went to Bristow Medical Center with chest pain.  (R. 246-54, 282-321).  In March, plaintiff was admitted to the hospital overnight for treatment, which doctors thought might be related to her anxiety.  (R. 282-321).  Plaintiff received morphine for her chest pain, but she also complained of a headache, both in the emergency room and in the hospital room.  (R. 301, 315).  Plaintiff requested pain medication for the headache in the emergency room, but the nurses noted that plaintiff was laughing and talking with friends.  (R. 301).  Plaintiff made the same request in her hospital room, but the nurses saw no signs of acute distress and noted that plaintiff was resting and watching television.  (R. 315).  Plaintiff was discharged the following day with a prescription for anxiety.  (R. 285).  In April, plaintiff was treated quickly and released within a few hours.  (R. 246-54).  Plaintiff had no other complaints of pain at that time.  (R. 248).

In June 2008, plaintiff was admitted to the emergency room at Bristow Medical Center on two separate occasions with a migraine.  (R. 273-77, 278-82).  Upon her first admission, plaintiff also complained of neck and back pain, and the doctor noted that she exhibited signs of both migraine and tension headache.  (R. 280).  Plaintiff did not complain of neck or back pain during her second visit.  (R. 275).  Both times, plaintiff was treated with pain medication and released.  (R. 274, 282).

In July 2008, plaintiff was again admitted to St. John's emergency room with chest pain. (R. 223-38).  Although the records note a history of headaches and back pain, plaintiff did not

---

[2]   Cyclobenzaprine, or Flexeril, is a muscle relaxer used to relieve pain caused by muscle injuries.  See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000699/ (last visited on March 27, 2012).

complain of those symptoms at that time.  (R. 232-33).  A routine examination showed that plaintiff had normal strength in her upper limbs and good grip strength.  (R. 233).

Finally, in December 2008, plaintiff was admitted to OSU's emergency room with a kidney stone.  (R. 421).  Plaintiff stated that she had no neck or back pain, other than the pain associated with the kidney stone.  (R. 422).  The emergency room physician noted that plaintiff had sought pain medication from multiple doctors within the past year and reminded plaintiff that she should work with a single doctor.  Id.

After her last emergency room visit, plaintiff missed several monthly appointments with the free clinic, but in March 2009, she resumed her medication management appointments.[3]  (R. 399-400, 404, 407-418).  During this time period, plaintiff continued to complain of joint pain and migraines.  (R. 399-400, 404).  By October 2009, plaintiff complained that she had trouble getting out of bed and walking due to pain.  (R. 407-418).  In February 2010, shortly before the ALJ hearing, the free clinic provided plaintiff's prescription history.  (R. 207, 429).

With respect to plaintiff's mental health issues, the record contains little evidence other than plaintiff's prescription for anxiety medication.  Plaintiff sought outpatient therapy at CREOKS in November 2007, where she was diagnosed with depression and offered group therapy and medication management.  (R. 328, 335).  Plaintiff failed to comply with the recommendations, however, and she was discharged in September 2008.  (R. 323).  The therapist noted that plaintiff had moved and left no forwarding address or telephone number.  Id.  Plaintiff re-enrolled at CREOKS in May 2009, where she was diagnosed "BiPolar, MRE Depressed."  (R. 378).  Again, the record indicates that plaintiff never attended any follow-up sessions.

---

[3]  In February 2009, plaintiff reported an increase in her neck and back pain after falling down a flight of stairs in January 2009.  (R. 179-88).  The record, however, reflects that plaintiff did not report this fall to her medical care providers at the free clinic.

**The ALJ Hearing**

In preparation for the hearing with the ALJ, the Commissioner ordered two consultative examinations for plaintiff:  one with Dr. Seth Nodine, who examined plaintiff's range of motion, and one with Dr. Jeri Fritz, who conducted a mental status examination.  (R. 346, 355).  Dr. Nodine found that plaintiff had a normal range of motion in all of her joints and had good grip strength in both hands.  (R. 348-53).  He found no swelling in her extremities.  (R. 348).  Dr. Nodine did note that plaintiff "appears to be in pain with [range of motion] of the neck and back," which could increase plaintiff's reports of migraine headaches, but he found no other abnormalities.  (R. 348-49).

Dr. Fritz found plaintiff to be a "poor historian."  (R. 356).  Plaintiff could not recall the dates of her parents' deaths or provide information about her siblings.  Id.  Plaintiff denied a history of drug use, but Dr. Fritz reviewed medical records which indicated that plaintiff had been treated for alcohol and intravenous methamphetamine abuse in 2005.  Id.  Dr. Fritz then conducted a number of tests to determine plaintiff's mental status.  (R. 357-58).  All of the results were invalid because plaintiff was evasive and "attempted to create the impression of significant cognitive impairment."  Id.  Despite the test results, Dr. Fritz concluded that plaintiff "most likely has the ability to follow simple directions and maintain her attention and concentration for short periods of time."  (R. 358).

With these medical opinions before him, the ALJ conducted the hearing on February 25, 2010.  (R. 26-60).  Plaintiff testified that she once worked as a motel housekeeper and as a lawn worker but that pain in her back, arms, and hands and her migraine headaches prevented her from working.  (R. 38-39).  Plaintiff also stated that she could only sit for thirty minutes at a time before her back pain became so great that she needed to lie down.  (R. 41).  Plaintiff also

reported similar limitations with standing, stating that after standing for fifteen minutes, she has to sit down for ten or fifteen minutes to relieve the pain.  Id.  Plaintiff also testified to significant exertional impairments with respect to reaching, lifting, holding items, squatting, and kneeling. (R. 42-44).  Plaintiff testified that her migraine headaches were persistent and debilitating.  (R. 44-46).  Plaintiff stated that her migraines would last from three to seven days and that she suffered from nausea when she had them.  (R. 45-46).

Plaintiff testified that her anxiety kept her from socializing with friends or doing any shopping.  (R. 46-47).  She did get up and get dressed every day, but plaintiff was homebound three or four days every week.  (R. 47).  Plaintiff testified that she had taken medication for that anxiety for the last eighteen months.  Id.  She described weekly mood swings, which led to anger and crying jags.  (R. 48).  Plaintiff claimed that she had briefly sought counseling but felt that it did not help.  (R. 49-50).  Plaintiff also claimed that she missed counseling appointments due to her lapses in memory.  (R. 49).

During the hearing, plaintiff also professed to have poor memory.  When the ALJ questioned inconsistencies in the record, plaintiff either stated that she could not recall specific incidents or stated that she only remembered them with the ALJ's prompting.  (R. 35, 49-51). The ALJ specifically asked plaintiff about her past drug use, including an arrest for public intoxication a few years before.  (R. 35).  Plaintiff also denied giving inconsistent statements to counselors at a community therapy center.  (R. 49-51).

Following plaintiff's testimony, a vocational expert testified.  (R. 52-60).  She rated plaintiff's past work as a motel housekeeper as unskilled, light exertion.  (R. 52-53).  Plaintiff's past work as a lawn worker was unskilled, heavy exertion.  (R. 53).  The vocational expert then answered five hypotheticals from the ALJ.  In the first one, the vocational expert assumed a

forty-seven-year-old female with an eighth grade education able to perform light and sedentary work, follow simple instructions, and work under routine supervision. (R. 54-55). The ALJ also included non-exertional limitations of pain, fatigue, depression, and anxiety, although those symptoms would not prevent plaintiff from being attentive enough to complete her tasks. Id. The vocational expert testified that plaintiff would be able to perform her past work as a motel housekeeper and a number of other light and sedentary jobs. Id.

The next two hypotheticals added additional restrictions on sitting and standing, limited interaction with the public, and weight lifting restrictions. (R. 55). The vocational expert testified that with those additional limitations, plaintiff would only be able to perform sedentary work. Id. When the ALJ added limitations on head and neck movement and limits on fingering and handling tools, the vocational expert testified that plaintiff would not be able to perform any work without frequent hand movements and bilateral hand dexterity. (R. 56-57). Finally, that ALJ included a limitation of fifteen minute breaks every hour and close supervision. (R. 57-58). The vocational expert testified that both limitations would prevent plaintiff from finding competitive work. (R. 58). On cross-examination by plaintiff's attorney, the vocational expert also testified that a GAF of less than fifty over an extended period of time would indicate that plaintiff could not hold a job. Id. Finally, the vocational expert testified that if plaintiff's complaints were credible, plaintiff would not be able to work. (R. 59).

**The ALJ's Decision**

The ALJ held that plaintiff had not engaged in substantial gainful activity since her protected filing date of August 14, 2008. (R. 14). Plaintiff had the following severe impairments: back pain, anxiety, and depression. Id. The ALJ found, however, that plaintiff did not meet or medically equal a listing. Id. The ALJ applied the special technique for mental

impairments and found that plaintiff had only mild restrictions in her activities of daily living, moderate difficulty with social functioning, moderate difficulty with concentration, persistence, and pace, and no episodes of decompensation.  (R. 14-15).  The ALJ also found very little objective medical evidence that plaintiff had any mental impairment at all.  (R. 17-18).

With respect to plaintiff's physical impairments, the ALJ concluded that the medical evidence showed no diagnosis of any spinal problems, such as nerve root compression, spinal arachnoiditis, or spinal stenosis.  (R. 15).  Plaintiff's medical records showed treatment that was more consistent with chest pain than back pain.  (R. 17).  Additionally, the ALJ found that the consultative exam showed that plaintiff had a normal range of motion and "some pain which would not be possible unless she had a more limited range of motion."  (R. 18).  The ALJ also discussed the applicable regulations for disability determination when a claimant has a history of drug and alcohol abuse.  (R. 12).  After reciting the applicable test, the ALJ made the following statement:  "The objective medical evidence shows that the claimant would not be disabled considering the effects of her drug and alcohol abuse."  Id.  The remainder of the ALJ's decision addresses plaintiff's past drug and alcohol abuse only in the context of her credibility and the possibility that plaintiff was engaging in drug-seeking behavior.  (R. 17-18).

The ALJ found that plaintiff had the residual functional capacity to perform light and sedentary work with restrictions on climbing and exposure to heights and dangerous machinery. (R. 15-16).  The ALJ also found that plaintiff could understand, remember, and carry out "simple to moderately detailed instructions" and work under routine supervision.  (R. 16).  With these limitations, the ALJ concluded that plaintiff could perform her past work as a motel housekeeper and could also perform light work as a "laundry sorter" or "assembler" or sedentary work as a

"bonder assembler" or "sorter."[4]  (R. 20).  In light of plaintiff's ability to perform light and sedentary work, the ALJ concluded that plaintiff was not disabled and denied plaintiff disability benefits.  (R. 20-21).

## ANALYSIS

On appeal, plaintiff raises five points of error:  (1) that the ALJ failed to make a full and fair inquiry, thereby denying plaintiff due process; (2) that the ALJ conducted an improper evaluation of plaintiff's past drug and alcohol abuse; (3) that the ALJ formulated an improper hypothetical that did not include all of the limitations that the ALJ ultimately found; (4) that the ALJ failed to properly consider the medical source opinion evidence; and (5) that the ALJ made an improper credibility determination.  (Dkt. # 13 at 2).

## Due Process

A hearing before an ALJ on a claimant's application for disability benefits "is subject to procedural due process considerations."  Allison v. Heckler, 711 F.2d 145, 147 (10th Cir. 1983) (citing Richardson v. Perales, 402 U.S. 389, 401-02, 91 S.Ct. 1420, 1427-28, 28 L.Ed.2d 842 (1971)).  Due process requires that a claimant receive a "full and fair" hearing.  Richardson, 402 U.S. at 401-02.  In this case, plaintiff argues that the ALJ exhibited bias toward her that amounted to a denial of her due process right to a fair and impartial hearing.  (Dkt. # 13 at 2-4).  Plaintiff contends that the ALJ acted as an adversary in questioning her, mischaracterized evidence, and cited evidence not in the record.  (Dkt. # 13 at 2-4, R. 18).  The Commissioner

---

[4]  The heading to this section of the ALJ's decision states that plaintiff could also perform her past relevant work as a lawn worker.  (R. 19).  That work is categorized as heavy work, which the vocational expert determined plaintiff could not do.  (R. 52-53, 54-55).  Although the heading indicates that plaintiff could perform this work, the analysis of plaintiff's residual functional capacity is limited to light and sedentary work.  (R. 19-20).

argues that plaintiff's conclusory allegations of bias are insufficient to overcome the presumption of impartiality and that the ALJ's findings are consistent with a proper credibility determination.

An ALJ is presumed to be unbiased.  See Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (holding that there is a "presumption of honesty and integrity in those serving as adjudicators.").  Plaintiff bears the burden of "producing sufficient evidence to overcome this presumption."  Perkins v. Astrue, 648 F.3d 892, 902-03 (8th Cir. 2011).

Each of plaintiff's arguments that the ALJ exhibited bias is without merit.  The ALJ questioned plaintiff's history of drug use and her criminal history after she testified that she had given up drugs and alcohol ten or fifteen years ago.  (R. 34-35).  That testimony was inconsistent with plaintiff's medical history, which Dr. Fritz reviewed prior to conducting her consultative examination.  (R. 355).  The ALJ also questioned plaintiff's inconsistent statements regarding her criminal history, which included an arrest for public intoxication just two to five years earlier.  (R. 35).  Plaintiff claimed that she had issues with memory that prevented her from recalling both her drug use and her criminal history.  (R. 35-36).  As the ALJ correctly stated, plaintiff's memory was a factor to be considered in his credibility determination.  See Jesse v. Barnhart, 323 F.Supp.2d 1100, 1105-06 (D.Kan. 2004) (holding that a claimant's inconsistent testimony was a proper factor in assessing credibility).  Accordingly, the ALJ's questioning on these issues did not constitute bias toward plaintiff, and the ALJ was not relying on evidence outside the record.

The ALJ also did not evidence bias by finding that plaintiff was engaging in drug-seeking behavior.  The ALJ referenced an emergency room report from December 2008 in which the doctor noted that plaintiff had seen multiple doctors for pain medication.  (R. 422).  The ALJ characterized that evidence as follows: "Dr. Gearhart politely wrote that the claimant had drug

seeking behavior as documented that she was receiving narcotics from several other providers." (R. 18).  Upon review of the emergency room report, and in light of a second emergency room report from December 2007 in which that doctor did state that plaintiff appeared to be "seeking drugs," this Court cannot conclude that the ALJ mischaracterized the evidence.  (R. 214, 422).

Finally, plaintiff argues that the ALJ's remarks about plaintiff constitute bias.  The ALJ challenged plaintiff's statements that she was hearing voices and appeared frustrated when plaintiff stated that she did not know the definition of a hallucination.  (R. 51).  These statements do not establish bias because "expressions of impatience, dissatisfaction, annoyance, and even anger" are insufficient to overcome the presumption.  Liteky v. United States, 510 U.S. 540, 555-56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (citing the standard for bias in evaluating a judge's courtroom demeanor).  See also Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (applying the Liteky standard to a social security disability case).  Bias is established only when the ALJ's behavior is "so extreme as to display clear inability to render fair judgment."  Liteky, 510 U.S. at 551, 114 S.Ct. 1147.  Plaintiff has failed to meet that burden.

## Drug Addiction or Alcoholism Analysis ("DAA")

When a claimant has substance abuse issues that may contribute to a finding that the claimant is disabled, the ALJ is required to conduct a drug addiction or alcohol addiction ("DAA") analysis under 42 U.S.C. § 423(d)(2)(c) and 20 C.F.R. § 416.935(a).  Plaintiff argues that the ALJ was required to conduct the analysis simply because the record indicates that plaintiff previously struggled with drug and alcohol addiction.  (Dkt. # 13 at 4-5).  The Commissioner argues that the analysis is not required where the ALJ determines that a claimant is not disabled.  (Dkt. # 15 at 5).

The applicable regulation provides as follows:  "If we find that you are disabled *and* have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability. . . ." 20 C.F.R. § 416.935(a) (emphasis added).   The Tenth Circuit Court of Appeals has held that "[t]he implementing regulations make clear that a finding of disability is a condition precedent to an application" of the DAA analysis.  Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001).   Here, the ALJ did not find that plaintiff is disabled.[5]   Accordingly, plaintiff's argument that the ALJ erred in failing to conduct the DAA analysis is without merit.

**The ALJ's Hypothetical**

Plaintiff next challenges the ALJ's hypothetical, arguing that the ALJ did not include all of the impairments that he ultimately included in his findings of plaintiff's residual functional capacity.  Specifically, plaintiff argues that the ALJ ignored plaintiff's hand and neck issues and minimized her back pain.  Plaintiff also notes the discrepancy between the ALJ's finding that plaintiff was limited to light and sedentary work and his "finding" that she could do past relevant work as a lawn worker.  The Commissioner argues that substantial evidence supported the ALJ's residual functional capacity findings and that the hypotheticals posed to the vocational expert encompassed all of those findings.  The Court has already noted the discrepancy in the ALJ's finding that plaintiff could do past relevant work as a lawn worker in a heading and his analysis that plaintiff was limited to light and sedentary work *supra*.  Given that the ALJ's statement regarding plaintiff's ability to do lawn work was contained in a heading and that the ALJ's

---

[5]  If the ALJ had found that plaintiff was disabled, then he would have been required to conduct the DAA analysis to determine whether plaintiff's drug and alcohol abuse was "a contributing factor material to the determination of disability. . . ."  20 C.F.R. § 416.935(b)(1).  In other words, the ALJ would have been required to analyze whether plaintiff would still be disabled in the absence of drug and alcohol abuse.

analysis was specifically limited to light and sedentary work, thereby excluding lawn work, the Court believes that the discrepancy is simply a clerical error and adopts the ALJ's analysis as the actual findings.

Plaintiff's argument here is two-fold.  First, plaintiff appears to challenge the ALJ's findings regarding the severity of plaintiff's back pain and the severity of her physical limitations with respect to her neck and hand issues.  Second, plaintiff argues that the ALJ did not include all of the required impairments in the hypothetical.  To the extent that plaintiff is challenging the ALJ's findings, the Court holds that the ALJ's findings are supported by substantial evidence. Plaintiff contends that the ALJ ignored objective medical evidence and plaintiff's subjective complaints of neck pain and weakness in her hands.[6]  (Dkt. # 13 at 6).  The ALJ, however, adopted the findings of Dr. Nodine, who found that plaintiff's range of motion was within normal limits and that plaintiff had good grip in both hands.  (R. 346-53).  Although Dr. Nodine noted that plaintiff complained of pain while moving her neck, "disability requires more than mere inability to work without pain."  Gossett v. Bowen, 863 F.2d 802, 805 (10th Cir. 1988). The ALJ also noted a lack of objective medical evidence tying plaintiff's pain to a specific medical condition.  The ALJ's findings were supported by substantial evidence and will not be disturbed.

With respect to plaintiff's second argument, the Court finds that the ALJ was not required to include those limitations in his hypothetical to the vocational expert.  In order for the vocational expert's hypothetical to constitute substantial evidence to support the ALJ's decision,

---

[6] Plaintiff cites to the findings of her "treating physician," Dr. Sherry Richardson, which found plaintiff had "positive straight leg raising" on two occasions.  Nothing in the record indicates that Dr. Richardson, who saw plaintiff only two times, was a treating physician.  Accordingly, the ALJ was free to disregard those notations.  See Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003) (holding that a "treating physician" must have more than a "fleeting relationship" with the claimant).

the ALJ must "'relate with precision all of a claimant's impairments'" that are borne out by the record evidence.  Gay v. Sullivan, 986 F.2d 1336, 1340 (10th Cir. 1993) (quoting Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991).  All of the impairments included in the ALJ's residual functional capacity findings are included in the ALJ's first hypothetical.  (R. 15-16, 54-55).  Based on those findings, the vocational expert testified that plaintiff could perform a number of light and sedentary jobs.  (R. 54-55).  Therefore, the ALJ's findings are supported by substantial evidence.

**Medical Source Evidence**

Next, plaintiff argues that the ALJ ignored the evidence from CREOKS, claiming that the therapists who counseled plaintiff provided medical source evidence in the form of plaintiff's GAF score.  (Dkt. # 13 at 7).  The Commissioner argues that a counselor at a mental health care facility does not constitute a treating source and that plaintiff did not have a treatment relationship with CREOKS.

Plaintiff visited CREOKS twice, once in November 2007 and once in May 2009.  (R. 323, 381).  On her first visit, she saw a licensed clinical social worker.  (R. 330).  On her second visit, she saw a licensed professional counselor.  (R. 381).  Acceptable medical sources are defined in 20 C.F.R. §§ 416.902 and 416.913(a).  Neither licensed clinical social workers nor licensed professional counselors are included in that definition.  For a mental health provider to qualify as an acceptable medical source, he or she must be a licensed or certified psychologist. See 20 C.F.R. § 416.913(a)(2).  Even if the Court assumed that CREOKS was a treating source, plaintiff was discharged from CREOKS for failure to comply with the recommended therapy and medication management.  (R. 323).  Her return visit in May 2009 also appears to be an isolated incident because the record contains no evidence that plaintiff returned for therapy.  Plaintiff had

no treating relationship with CREOKS.  See Doyal, 331 F.3d at 762.  Accordingly, the ALJ did not err in disregarding the GAF scores.

**Credibility Determination**

Plaintiff argues that the ALJ erred in making his credibility determination because he used boilerplate language and failed to specify which of plaintiff's statements he categorized as true or untrue.   (Dkt. # 13 at 8-9).  Plaintiff then cites a number of facts that she claims support her credibility, including her consistent statements to doctors about pain.

This Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact."  Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990).  Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  Id. (citing Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)).  The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence."  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Plaintiff's "boilerplate language" argument fails in this case because boilerplate language is insufficient to support a credibility determination only "in the absence of a more thorough analysis."  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  Although the ALJ did recite the generally disfavored boilerplate language, the ALJ also cited a number of findings which supported his finding that plaintiff was not disabled.  (R.

17-18).  The ALJ cited to the lack of objective medical evidence with respect to her alleged mental impairments.  <u>Id.</u>  He also cited the inconsistencies in her testimony and the record evidence.  (R. 18).  The ALJ also noted plaintiff's inconsistent treatment history.  <u>Id.</u>  Finally, the ALJ adopted Dr. Fritz's findings that plaintiff was evasive and Dr. Nodine's findings that plaintiff had a normal range of motion.  <u>Id.</u>  He concluded that "[n]o examination of the claimant supports the extent of her alleged limitations."  <u>Id.</u>  These findings constitute substantial evidence; therefore, the ALJ credibility determination was proper.

## <u>CONCLUSION</u>

For the above stated reasons, this Court AFFIRMS the Commissioner's decision denying Supplemental Security Income

SO ORDERED this 28th day of March, 2012.


_____

T. Lane Wilson
United States Magistrate Judge